IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MAX RACK, INC.,** | : | |
| | : | **Case No. 2:16-cv-01015** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **CORE HEALTH & FITNESS, LLC, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#34] AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#35]**</u>

**I. INTRODUCTION**

This matter is before the Court on Plaintiff and Defendants' Cross-Motions for Summary

Judgment.  (Docs. 34 & 35.)  The Motions are ripe for review, and the Court will resolve each of

them without oral argument.  For the reasons set forth below, the Court **GRANTS IN PART** and

**DENIES IN PART** Defendants' Motion [#34] and **DENIES** Plaintiff's Motion [#35].

**II. BACKGROUND**

Plaintiff Max Rack, Inc. is an Ohio corporation that markets and sells weightlifting

equipment throughout the United States, including a machine known as the MAX RACK.

(Complaint, Doc. 1 at 1.)  Plaintiff owns the trademark for MAX RACK, as well as two patents

associated with the machine's design.  (*Id.* at 4; Doc. 35 at 6.)

On January 24, 2006, Plaintiff and Defendant Star Trac Strength, Inc. ("Star Trac") entered

into a licensing agreement, whereby Star Trac obtained the exclusive right to manufacture, sell,

and distribute the MAX RACK until November 21, 2015, the date when the patents associated

with the machine would expire.  (License Agreement, Doc. 34-3 at 3; Memorandum in Support of Defendants' Motion for Summary Judgment, Doc. 34-1 at 8.)  Once the agreement terminated, Star Trac would be permitted to continue selling MAX RACK units already in production for a six-month period.  (Doc. 34-3 at 9.)  For each unit sold prior to or during this run-off period, Star Trac was obligated to pay Plaintiff $120 in royalties.  (*Id.* at 4.)

On October 13, 2015, and in anticipation of their licensing agreement expiring, Defendant Core Health and Fitness, LLC ("Core Fitness"), a successor to Star Trac, sent Plaintiff a letter informing them that once their agreement terminated, it would continue selling a product identical to the MAX RACK but under the name FREEDOM RACK.  (Doc. 34-4; Doc. 34-1 at 9.)  To that end, Core Fitness began implementing the name change on its company website, in associated printed materials, with its manufacturer, and with its independent dealers and distributors.  (Doc. 34-1 at 9.)  But as late as November 2017, Core Fitness had failed to remove every reference to MAX RACK from its website.  (*Id.*; Decl. Erin O'Brien, Doc. 34-10 at 2-3; Doc. 35 at 7.)  Core Fitness also sold 24 MAX RACK units after the six-month run-off period had expired.  (Doc. 34-1 at 9-10.)

Plaintiff contends, among other things, that Defendants intentionally used the MAX RACK name to create confusion between MAX RACK and FREEDOM RACK.  (Doc. 1 at 7.) Accordingly, Plaintiff brings this action asserting five claims under federal and state law: (Count One) Infringement of a Federally Registered Trademark, 15 U.S.C. § 1114(1); (Count Two) Unfair Competition under the Lanham Act, 15 U.S.C. § 1501 et seq.; (Count Three) False Advertising in Interstate Commerce under the Lanham Act; (Count Four) Trademark Misuse in Interstate Commerce under the Lanham Act; and (Count Five) Deceptive Trade Practices under Ohio Law, O.R.C. § 4165.  (*Id.* at 7-12.)

Defendants concede that they owe Plaintiff damages for the 24 MAX RACK units that they sold after the agreed upon six-month run-off period.  (Doc. 34-1 at 9-10.)  Defendants have thus offered to pay Plaintiff the full gross revenue from these sales: $44,403.  (*Id.*)  Defendants also acknowledge that they must pay Plaintiff royalties for the 238 MAX RACK units that they sold during the sixth-month run-off period, amounting to an additional $28,560 in damages.  (*Id.*)  Defendants maintain that these concessions should bring an end to this action.  (*Id.* at 10.)  Plaintiff, however, disagrees, and moves for summary judgment on Counts One and Two of the Complaint, as well as on certain elements of damages.  (Doc. 35 at 10.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court may grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  No dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In resolving cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 241 (6th Cir. 1991)).  Ultimately, the court must evaluate "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52.

## IV. ANALYSIS

Defendants move for summary judgment on all counts in Plaintiff's Complaint, arguing Plaintiff fails to support its claims for relief with admissible evidence.  Plaintiff, in turn, moves for summary judgment on Counts One and Two, as well as on certain elements of damages, arguing there is no dispute that Defendants used the MAX RACK name to bolster the sales of the FREEDOM RACK.

As an initial matter, Plaintiff did not file a timely response to Defendants' Motion for Summary Judgment.  Nor did Plaintiff attach supporting exhibits to its own Motion for Summary Judgment.  Although Plaintiff attempted to cure these deficiencies, the Court Denied Plaintiff's Motion for Leave to File.  (*See* Doc. 45.)  Consequently, the Court will not consider Plaintiff's untimely filings or exhibits for purposes of resolving the Motions for Summary Judgment.

### A.  Lanham Act Claims

Counts One and Two of the Complaint assert claims of Trademark Infringement and Unfair Competition under the Lanham Act.  Plaintiff and Defendants' Motions, though seeking relief on the same claims, raise separate issues.  Defendants move for summary judgment, arguing their mark, FREEDOM RACK, does not create a likelihood of confusion between it and Plaintiff's MAX RACK mark.  (Doc. 34-1.)  Plaintiff, on the other hand, appears to move for summary judgment, arguing Defendants' unauthorized references to MAX RACK on their website created a likelihood of confusion by suggesting the two marks were associated.

To prevail on a trademark infringement and unfair competition claim under the Lanham Act, a plaintiff must establish that the defendant's trademark creates a likelihood of confusion regarding the origin of goods or services offered by the respective parties.  *Progressive Distribution Servs., Inc. v. UPS, Inc.*, 856 F.3d 416, 424 (6th Cir. 2017).  The Sixth Circuit has

4

identified eight factors that courts should consider when evaluating whether there is a likelihood

of confusion: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the

marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of

purchaser care; (7) defendant's intent in selecting the marks; and (8) likelihood of expansion of

the product lines. *Id.* Importantly, "[n]ot all of these factors will be relevant in every case, and in

the course of applying them, [t]he ultimate question remains whether relevant consumers are likely

to believe that the products or services offered by the parties are affiliated in some way." *Id.*

(internal quotations omitted).

1. Strength of Plaintiff's Mark

The strength of mark factor "focuses on the distinctiveness of a mark and its recognition

among the public." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632 (6th Cir. 2002).

Generally, "the strength of a mark is the result of its unique nature, its owner's intensive

advertisement efforts, or both." *Id.* But a trademark's distinctiveness and resulting strength also

"depends partly upon which of the four categories it occupies: generic, descriptive, suggestive,

and fanciful or arbitrary." *Id.* (quoting *Daddy's Junky Music Stores, Inc, v. Big Daddy's Family

Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).

The Sixth Circuit has held that a mark registered for five years should be considered strong

and worthy of full protection. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 600 (6th Cir.

1991). Nevertheless, "the significance of its presumed strength will depend upon its recognition

among members of the public." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 632 (6th

Cir. 2002). In other words, "[t]reating a valid, incontestable trademark as an exceptionally strong

mark for the purpose of determining whether confusion is likely to occur, without examining

whether the mark is distinctive and well-known in the general population, would shift the focus

away from the key question of whether relevant consumers are likely to believe that the products

or services offered by the parties are affiliated in some way." *Id.* (internal quotations omitted).

Therefore, "[a]lthough a trademark may be strong and worthy of full protection because it is valid

and incontestable, that does not necessarily mean that its strength is particularly relevant to the

ultimate issue of whether confusion is likely to occur." *Id.* (internal quotations and citations

omitted).

Here, it is undisputed that Plaintiff's trademark, MAX RACK, has been registered with the

United States Patent and Trademark Office for over twenty years.  (Doc. 34-7.)  But as the Sixth

Circuit makes clear, this does not end the inquiry.  *See Therma-Scan*, 295 F.3d at 632.  Plaintiff

asserts, without further explanation or any evidentiary support, that its mark is famous within its

field of use.  This, however, amounts to nothing more than an unsubstantiated claim, hyperbolic

in its essence.  Plaintiff does not, for example, offer evidence of MAX RACK being featured in

weightlifting publications, Internet articles, or the like.  As such, the Court cannot conclude with

any certainty that Plaintiff's mark is particularly strong within its field.  Thus, this first factor

weighs against likelihood of confusion.

## 2.   Relatedness of the Goods

The relatedness inquiry focuses on "whether goods or services with comparable marks that

are similarly marketed and appeal to common customers are likely to lead consumers to believe

that they come from the same source, or are somehow connected with or sponsored by a common

company." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 797 (6th Cir. 2004) (quoting *Therma-*

*Scan*, 295 F.3d at 633).  Here, there is no dispute that Plaintiff and Defendants' weightlifting

machines are related.  In fact, Defendants confirm that the MAX RACK and the FREEDOM

RACK machines are identical products.  (*See* Doc. 34-1 at 17.)  Given these similarities, this second factor will weigh in favor of likelihood of confusion.

### 3.  Similarity of the Marks

Similarity of marks is a factor of considerable weight.  *Progressive*, 856 F.3d at 432.  In evaluating whether the mark is similar, "a court should not examine the marks side by side but instead must determine, in the light of what occurs in the marketplace, whether the mark will be confusing to the public when singly presented."  *Id.* (internal quotations omitted).  To aid in this determination, courts should consider "the pronunciation, appearance, and verbal translation of conflicting marks."  *Id.* (internal quotations omitted).

Here, Plaintiff and Defendants' Motions emphasize different points.  Defendants argue that the MAX RACK and FREEDOM RACK marks are dissimilar in appearance and in sound, whereas Plaintiff argues that Defendants' unauthorized use of the MAX RACK mark, in and of itself, is irrefutable evidence of similarity.

Beginning with Defendants' argument, the Court agrees that the MAX RACK and FREEDOM RACK marks are not similar.  Aside from both containing the word RACK, which is not independently protected, and which is simply descriptive of the machine, there is no comparison.  (*See* FREEDOM RACK Trademark Registration, Doc. 34-6; MAX RACK Trademark Registration, Doc. 34-7.)  Moreover, the terms MAX and FREEDOM do not sound alike, and there is no indication that the marks resemble one another in design, font, or color. *See Progressive*, 856 F.3d at 433 ("[W]hen we analyze the marks as they appear in the marketplace, we see little basis for similarity.  The respective marks are displayed in different colors and fonts and depicted with distinct design elements.").

At the same time, the Court acknowledges that Defendants' unauthorized use of the MAX RACK mark on their website would support a finding of similarity under this third factor.  But noticeably absent from Plaintiff's argument is any evidentiary support demonstrating the number of times the MAX RACK mark appeared on Defendants' website or in what context.[1]  Although Defendants admit that there were "a few" inadvertent references to MAX RACK left on its website due to human error, (*See* Doc. 34-10 at 2-3), this does not provide the Court with the full context of the alleged infringements.  At most, this creates a material question of fact surrounding whether these unauthorized references to MAX RACK, coupled with Defendants' sale of the FREEDOM RACK machine, created a likelihood of confusion surrounding the affiliation of these two products.  Accordingly, this third factor will neither weigh in favor of nor against likelihood of confusion.

4.   Evidence of Actual Confusion

Evidence of actual confusion is the best evidence of likelihood of confusion.  *AutoZone*, 373 F.3d at 798.  Evidence of the number of instances of actual confusion, however, "must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given to the evidence.  If there is a very large volume of contacts or transactions which could give rise to confusion and there is only a handful of instances of actual confusion, the evidence of actual confusion may be disregarded as de minimis."  *D & J Master Clean, Inc. v. Servicemaster Co.*, 181 F. Supp. 2d 821, 828 (S.D. Ohio 2002) (quoting *MCCARTHY ON TRADEMARKS* § 23:14).  Still, "[a] lack of such evidence is rarely significant, and the factor of actual confusion is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have

---

[1] Again, the Court emphasizes that it has not considered Plaintiff's late filings.

been available." *AutoZone*, 373 F.3d at 798-99 (quoting *Daddy's Junky Music Stores, Inc, v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997)).

The only evidence before the Court on this issue comes from Defendants, who offer the deposition testimony of Kirk Moritz, Plaintiff's Chief Operating Officer.  At his deposition, Moritz testified that he had no personal knowledge of consumers who had been confused by Defendants' use of the MAX RACK mark.  (Dep. Kirk Moritz, Doc. 34-12 at 2.)  Later, however, Moritz claimed that Plaintiff occasionally received calls from customers who purchased a FREEDOM RACK believing it was a MAX RACK.  (*Id.* at 5.)  Moritz also testified that he has received calls -- but less than ten -- from customers who claim to own a MAX RACK and believed they had purchased it from Plaintiff.  (Doc. 34-13 at 5-6.)  Only after further inquiry was Moritz able to determine that these individuals were calling about the FREEDOM RACK.  (*Id.* at 6.)  Finally, Moritz noted that a research paper published in December 2016 mistakenly claimed Defendants were manufacturing the MAX RACK.  (*Id.* at 3.)

Even accepting Moritz's claims as true, "[e]vidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given to the evidence."  *See D & J Master Clean, Inc.*, 181 F. Supp. 2d at 828.  Here, the few claims of confusion that Moritz highlights pale in comparison to the more than 5,000 MAX RACK units sold during the term of the parties' licensing agreement, and the 794 FREEDOM RACK units sold just through June of 2017.  (*See* Doc. 34-1 at 22.)  Thus, Plaintiff has not presented more than de minimis evidence of actual confusion among consumers.  *See D & J Master Clean, Inc.*, 181 F. Supp. 2d at 828 ("If there is a very large volume of contacts or transactions which could give rise to confusion and

there is only a handful of instances of actual confusion, the evidence of actual confusion may be disregarded as de minimis."). Consequently, this factor will weigh against likelihood of confusion.

### 5.   Marketing Channels Used

Under the fifth factor, the Court considers "the similarities or differences between the predominant customers of the parties' respective goods or services, and whether the marketing approaches employed by each party resemble each other." *Audi AG v. D'Amato*, 469 F.3d 534, 543 (6th Cir. 2006).  Here, given that Plaintiff and Defendants sell identical, high-end weightlifting equipment, they necessarily target the same customer base.  Furthermore, it appears that both parties use the Internet for marketing purposes.  This factor will therefore weigh in favor of likelihood of confusion.

### 6.   Likely Degree of Purchaser Care

Generally, "in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution.  However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the [goods] at issue, a higher standard is proper.  Similarly, when [goods] are expensive or unusual, the buyer can be expected to exercise greater care in her purchases.  When [goods] are sold to such buyers, other things being equal, there is less likelihood of confusion." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1120 (6th Cir. 1996).

Here, as referenced above, Plaintiff and Defendants sell high-end weightlifting equipment.  According to Defendants, the FREEDOM RACK retails for around $2,000, and is typically purchased by fitness equipment dealers, health clubs, hotels, and other establishments operating fitness centers.  (Doc. 34-1 at 18.)  The Court presumes the same regarding the MAX RACK.  Because these expensive machines are not being purchased by the average consumer, but instead,

10

by sophisticated commercial buyers, there is a greater expectation of care.  Hence, this sixth factor weighs against likelihood of confusion.

### 7.   Defendants' Intent in Selecting the Marks

The intent of the defendant in adopting their mark is a critical factor because "if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be sufficient to justify the inference that there is confusing similarity." *D'Amato*, 469 F.3d at 544.

Here, there is no indication that Defendants had an ulterior motive in selecting the name FREEDOM RACK for its machine.  Defendants attest that they chose the name because of their pre-existing line of "Freedom" strength equipment.  (Doc. 34-1 at 34.)  Plaintiff has not rebutted this representation.

With respect to the unauthorized references to MAX RACK, Defendants maintain that these were the result of accidental human error.  Plaintiff disagrees, arguing that this was done intentionally to profit off the MAX RACK name.  Though Plaintiff alleges that it sent Defendants a letter in July 2016 alerting them of these unauthorized references, and that Defendants ignored them, Plaintiff again fails to provide any supporting evidence.  (Doc. 35 at 7.)  Still, considering that these references to MAX RACK remained on Defendants' website for at least a year and a half after the parties' agreement terminated, (*See* Doc. 34-10 at 2-3), the Court finds that a material question of fact remains surrounding Defendants' intent.  As such, this seventh factor will neither weigh in favor of nor against likelihood of confusion.

### 8.   Likelihood of Expansion of Product Lines

The final factor, likelihood of expansion of product lines, is inapplicable to the Court's analysis, as Plaintiff and Defendants' products already overlap.

11

In sum, three factors weigh against, two factors weigh in favor of, and two factors present material genuine issues of fact surrounding likelihood of confusion.  While these factors are helpful in guiding the Court's analysis, the ultimate question remains "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Progressive*, 856 F.3d at 424.  A reasonable juror considering Defendants' unauthorized references to MAX RACK, coupled with the similarity of the parties' products, could come out on either side of this question.  For that reason, it would be inappropriate to resolve Counts One and Two in either party's favor at this stage.  Accordingly, the Court **DENIES** Plaintiff and Defendants' Motions for Summary Judgment on Counts One and Two.

### B.  False Advertisement Under the Lanham Act

Count Three of the Complaint asserts a claim of False Advertising under the Lanham Act. For some unspecified period of time, Defendants displayed a registered trademark symbol alongside its advertisements for the FREEDOM RACK prior to the United States Patent and Trademark Office issuing such a trademark.  (Doc. 34-1 at26.)  Plaintiff alleges that this damaged its business reputation, its relationship with its customers, and its sales.  Plaintiff, however, fails to establish a connection between Defendants' misrepresentations and the harm alleged in the Complaint.

To succeed on a claim of false advertising under the Lanham Act, a plaintiff must establish five elements: (1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the

plaintiff. *Grubbs v. Sheakley Grp. Inc.*, 807 F.3d 785, 798 (6th Cir. 2015). Where an advertisement communicates a "literally false" message to consumers, courts will presume that the consumers were deceived. *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 270-71 (6th Cir. 2018).

Arguably, Defendants' premature representations regarding FREEDOM RACK's trademark status constitutes a "literally false" statement upon which the Court may presume deception. *See id.* But even if so, the Court strains to find a connection between this misstatement and the purported damage to Plaintiff's business reputation, its reputation with its customers, or its loss in sales. And, Plaintiff has offered no such explanation. *See Iams Co. v. Nutro Prods., Inc.*, 2004 WL 5779999, at *4 ("As the Sixth Circuit [has] recognized . . . both the second and fifth elements of a Lanham Act claim are matters of causation. They might be restated as (2) did the defendant's statement cause or tend to cause a substantial portion of the intended audience to be deceived and (5) did the defendant's statements actually cause any injury to the plaintiff or are they likely to do so in the future. Both elements of causation must be proved.") (citing *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)); *see also Scott v. Tennessee*, 1989 WL 72470, at *2 (6th Cir. July 3, 1989) ("[I]f a plaintiff fails to respond to or otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). For that reason, the Court **GRANTS** Defendants' Motion for Summary Judgment on Count Three.

### C. Private Right of Action for Trademark Misuse Claims

Count Four of Plaintiff's Complaint alleges that Defendants knowingly published statements purporting to identify goods under the registered trademark, FREEDOM RACK, although no such federally registered trademark existed at the time. Plaintiff contends that this was a violation of the Lanham Act, which entitles them to damages. The Court disagrees.

13

Courts have been reluctant to create an independent cause of action for trademark misuse. Rather, such claims have been recognized only as affirmative defenses. *See, e.g.*, *Ford Motor Co. v. Obsolete Ford Parts*, 318 F. Supp. 2d 516, 521 (E.D. Mich. 2004) ("[T]he court has been unable to locate a case in this circuit that recognizes trademark misuse as an independent cause of action. . . . The court declines to announce or create an independent cause of action for trademark misuse and finds that Defendant's claim is more appropriately cast as a potential affirmative defense."); *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 830 (E.D. Va. 2001) ("Trademark misuse is not an independent cause of action, but is, instead, only an affirmative defense to trademark infringement."); *Famology.com, Inc. v. Perot Sys. Corp.*, 158 F. Supp. 2d 589, 592-93 (E.D. Pa. 2001) ("Plaintiff has failed to point the court to a single case in which an American court has used trademark misuse affirmatively."). Because Plaintiff has failed to direct the Court to any authority creating a private right of action for trademark misuse, the Court will decline to create a private right of action here. Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Count Four.

### D.  Claims Under Ohio's Deceptive Trade Practices Act

Count Five of Plaintiff's Complaint alleges Defendants violated Ohio's Deceptive Trade Practices Act ("ODTPA") by (1) Passing off their Goods as those of Plaintiff's, § 4165.02(A)(1); (2) Causing a Likelihood of Confusion Regarding the Affiliation of their Goods, § 4165.02(A)(2); (3) Causing a Likelihood of Confusion Regarding the Source of their Goods, § 4165.02(A)(3); (4) Misrepresenting Certain Approvals Associated with their Goods, § 4165.02(A)(7); and (5) Disparaging Plaintiff's Business by False Representation of Fact, § 4165.02(A)(10).

In interpreting the ODTPA, Ohio courts apply "the same analysis applicable to claims commenced under analogous federal law." *Patel v. Dish Network L.L.C.*, 2015 WL 4776894, at

14

*4 (S.D. Ohio Aug. 12, 2015) (quoting *Chandler & Assoc. v. Am. Healthcare Alliance*, 125 Ohio App. 3d 572, 580 (Ohio Ct. App. 1997)).  The analogous federal law is the Lanham Act.  *Id.*  It follows that Plaintiff's claims under § 4165.02(A)(7), for Misrepresentation, and § 4165.02(A)(10), for Disparagement, are analyzed using the same five-part standard as False Advertising under the Lanham Act.  *See Collins Inkjet Corp. v. Eastman Kodak Co.*, 2014 WL 11516553, at *13 (S.D. Ohio Mar. 21, 2014).  Similarly, Plaintiff's claims under § 4165.02(A)(1), for Passing off Goods as those of Another, § 4165.02(A)(2), for Causing a Likelihood of Confusion Regarding the Affiliation of Goods, and § 4165.02(A)(3), for Causing a Likelihood of Confusion Regarding the Source of Goods, are analyzed using the same standard for Trademark Infringement and Unfair Competition under the Lanham Act.

The Court has already analyzed each of Plaintiff's ODTPA claims under their federal counterparts.  The Court will not repeat that analysis here.  Accordingly, for the reasons set forth in Sections (A) and (B) above, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiff's claims under § 4165.02(A)(7) (Misrepresentation) and § 4165.02(A)(10) (Disparagement).  The Court **DENIES** Defendants' Motion with respect to Plaintiff's claims under § 4165.02(A)(1) (Passing off Goods as those of Another), § 4165.02(A)(2) (Causing Likelihood of Confusion Regarding Affiliation of Goods), and § 4165.02(A)(3) (Causing Likelihood of Confusion Regarding Source of Goods).

### E.  Damages

Plaintiff's Motion for Summary Judgment requests a finding that Defendants derived at least $1,800,828 in revenue from the sales of MAX RACK equipment during the last quarter of 2015 and during the year 2016.  (Doc. 35 at 29.)  Though unclear, it appears that Plaintiff is claiming it is entitled to this full amount in damages.  Plaintiff, however, fails to articulate, with

15

clarity, why it is entitled to this amount or support its claim with evidence.  Accordingly, the Court **DENIES** Plaintiff's Motion.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment [#34] and **DENIES** Plaintiff's Motion for Summary Judgment [#35].  **Count Three** (False Advertising) and **Count Four** (Trademark Misuse) of the Complaint are hereby **DISMISSED**.  The Court also **DISMISSES** Plaintiff's claims under the **Ohio Deceptive Trade Practices Act § 4165.02(A)(7)** (Misrepresentation) and **§ 4165.02(A)(10)** (Disparagement).

**IT IS SO ORDERED.**

        **_/s/ Algenon L. Marbley_____**
        **ALGENON L. MARBLEY**
        **UNITED STATES DISTRICT JUDGE**

**DATED: September 17, 2019**