**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MAX RACK, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>CORE HEALTH & FITNESS, LLC,<br>STAR TRAC STRENGTH, INC.,<br>KEVIN CORBALIS, and JOHN DOE,<br><br>                    Defendants. | Civil Action No. 2:16-cv-1015<br><br>Judge Algenon L. Marbley<br><br>Magistrate Judge Chelsey M. Vascura |

**DEFENDANTS' AMENDED PROPOSED CASE-SPECIFIC**
**JURY INSTRUCTIONS AND VERDICT FORM**

Defendants Core Health & Fitness, LLC ("Core Fitness"), Star Trac Strength, Inc., and Kevin Corbalis (collectively "Defendants") propose the following amended case-specific jury instructions and verdict form.

On November 19, 2019, Defendants requested in writing that Plaintiff Max Rack, Inc. ("Max Rack")'s counsel cooperate with Defendants' counsel in preparing joint proposed case-specific jury instructions and a joint proposed verdict form. As of this date, December 1, 2019, Max Rack's counsel has failed, despite repeated additional requests for cooperation, to draft a joint proposal or to comment on Defendants' proposals. Nevertheless, Defendants have in good faith incorporated portions of Max Rack's proposals (ECF No. 64) into the following amended proposed jury instructions and verdict form.

**DEFENDANTS' AMENDED PROPOSED CASE-SPECIFIC JURY INSTRUCTIONS**

**1.      Trademark Infringement**

Plaintiff Max Rack, Inc. (referred to in these Instructions as "Plaintiff") alleges claims of trademark infringement against Defendants Core Health & Fitness, LLC, Star Trac Strength, Inc. and Kevin Corbalis (collectively referred to in these Instructions as "Defendants"), arising out of the use by Defendants of the mark FREEDOM RACK in connection with the sale of a product that was formerly sold by Defendants under the mark MAX RACK, pursuant to a patent license from Plaintiff that has expired.

To prevail upon its trademark infringement and unfair competition claims, Plaintiff must prove that: (1) Plaintiff owns the MAX RACK trademark; (2) Defendants used the MAX RACK trademark in interstate commerce; and (3) Defendants have used the MAX RACK trademark in a manner likely to cause confusion, mistake, or deception among ordinarily prudent buyers or prospective buyers as to the source, origin, sponsorship, or approval of Defendants' FREEDOM RACK product.

The test is not one of actual confusion, mistake, or deception. Rather, Plaintiff is required to prove a likelihood of confusion, mistake, or deception.

Adapted from 3A Fed. Jury Prac. & Instr. §§ 159:20 (6th ed.); *Progressive Distribution Servs., Inc. v. UPS, Inc.*, 856 F.3d 416 (6th Cir. 2017).

**2.** **Likelihood of Confusion**

In determining whether there is or will be a likelihood of confusion caused by the use of FREEDOM RACK by Defendants, you may draw on your common experience as citizens of the community. In addition to the general knowledge you have acquired throughout your lifetimes, you may also consider these factors:

1. Strength of Plaintiff's mark MAX RACK.

2. Similarity between the products in question.

3. Similarity between the marks in question.

4. Evidence of actual confusion among ordinary purchasers as to the source of the goods.

5. Similarity between Plaintiff's and Defendants' customers and marketing approaches.

6. The degree of care likely to be used by purchasers.

7. Defendants' intent in adopting the mark FREEDOM RACK, that is, whether there was an intent to confuse.

8. Other factors about the product that would tend to reduce any tendency to confuse the purchaser as to the source of origin of the product.

In light of these considerations and your common experience, you must determine if ordinary consumers, neither overly careful nor overly careless, would be confused as to the origin of the FREEDOM RACK product upon encountering the mark MAX RACK as the respective parties have used it in connection with their respective products. No one factor or consideration is conclusive, but each aspect should be weighed in light of the total evidence presented at the trial.

Adapted from 3A Fed. Jury Prac. & Instr. § 159:25 (6th ed.); *Progressive Distribution Servs., Inc. v. UPS, Inc.*, 856 F.3d 416 (6th Cir. 2017); *Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006).

3

3.      **Strength of marks**

How distinctively the MAX RACK trademark indicates that a good comes from a particular source is an important factor to consider for determining whether consumers are likely to be confused as to the origin of the FREEDOM RACK product upon encountering the mark MAX RACK as the respective parties have used it in connection with their respective products.

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks that are not as distinctive or strong are called "weak" and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any protection. For deciding trademark protectability, trademarks are grouped into four categories according to their relative distinctiveness. These four categories are, in increasing order of strength or distinctiveness: *generic*, *descriptive*, *suggestive*, and *arbitrary and fanciful*.

*Generic trademarks.* A generic term is the weakest type of mark. It is a term used to commonly describe the relevant type of goods or services, and cannot become a trademark under any circumstances. Examples of unprotectible generic names are "aspirin," "escalator," and "light beer."

*Descriptive trademarks.* A descriptive term is the second-weakest type of mark. A merely descriptive term specifically describes a characteristic of a product. A descriptive mark cannot become a trademark unless it has secondary meaning—that is, it has become distinctive of the Plaintiff's goods. A descriptive mark has secondary meaning if a prospective customer, seeing a product bearing the mark, would say, "That is the product I want because I know its source." A descriptive mark does not have secondary meaning if a prospective customer, seeing a product bearing the mark, would say, "Who makes that product?"

*Suggestive trademarks.* A suggestive term is the second-strongest type of mark. A suggestive term suggests, rather than describes, a characteristic of the product. It requires the

4

consumer to use imagination and perception to determine the nature of the product. Examples of suggestive marks include CITIBANK, which suggests an urban or modern bank, or GOLIATH, for wood pencils, connoting a large size. A suggestive term does not require secondary meaning to become a trademark.

*Arbitrary and fanciful trademarks.* Arbitrary and fanciful trademarks are the strongest. An **arbitrary** mark has a significance recognized in everyday life, but the thing it normally signifies is unrelated to the product to which the mark is attached. An example of an arbitrary mark is APPLE for computers. A **fanciful** mark is a combination of letters or other symbols signifying nothing other than the product to which the mark has been assigned. Examples of fanciful marks are EXXON and KODAK.

Adapted from *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996).

4.      **Fair Use**

Following expiration of the patent license and Defendants' change of the product name to FREEDOM RACK, Defendants continued to sometimes use the mark MAX RACK to inform consumers that the product formerly sold by Defendants as the MAX RACK was now sold as the FREEDOM RACK and to provide warranty service to purchasers of the MAX RACK product. Defendants also failed, for a time, to delete every reference to MAX RACK on the company web site and replace it with FREEDOM RACK.  Plaintiff claims that these uses of MAX RACK are infringing.  Defendants claim that these uses are not infringing under the doctrine of descriptive fair use.  Defendants have the burden of proving, by a preponderance of the evidence, their defense of descriptive fair use.

Descriptive fair use is a defense to a claim of trademark infringement. Defendants are not liable for infringement if they prove by a preponderance of the evidence that their use of the MAX RACK trademark is necessary to accurately describe a characteristic of their goods. To establish this defense, Defendants must prove that their use of the MAX RACK trademark is used:

1.      Other than as a trademark;

2.      In a descriptive sense; and

3.      Fairly and in good faith—that is, Defendants did not intend to trade on the goodwill of Max Rack, Inc. by creating confusion as to the source of Defendants' goods.

Adapted from 3A Fed. Jury Prac. & Instr. § 159:70 (6th ed.); *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853 (6th Cir. 2018).

**5.** **Unfair Competition**

Plaintiff Max Rack, Inc. claims that Defendants have engaged in unfair competition under federal law. Unfair competition is defined as follows:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.


Adapted from 15 U.S.C. § 1125.

**6.      Actual Damages**

If you find for Plaintiff on its infringement or unfair competition claims, you must determine Plaintiff's damages. Plaintiff has the burden of proving damages by a preponderance of the evidence.

Damages means the amount of money that will reasonably and fairly compensate Plaintiff Max Rack, Inc. for any injury you find was proximately caused by Defendants' infringement of Plaintiff's registered trademark.

You should consider whether any of the following exists, and if so to what extent, in determining Plaintiff's damages:

1.      Any injury to Plaintiff's reputation;

2.      Any injury to Plaintiff's goodwill, including any injury to Plaintiff's general business reputation;

3.      Any loss of Plaintiff's sales as a result of Defendants' infringement;

4.      Any loss of Plaintiff's profits;

5.      Any expense of preventing customers from being deceived;

6.      Any cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement; and

7.      Any other factors that bear on Plaintiff's actual damages.

When considering damages, you must not over-compensate. Any award of future costs should not exceed the actual damage to the value of Plaintiff Max Rack, Inc.'s mark at the time of infringement by Defendants.

Adapted from 3A Fed. Jury Prac. & Instr. § 159:91 (6th ed.); 15 U.S.C. § 1117.

7.      **Disgorgement**

In addition to actual damages, you may find that Plaintiff Max Rack, Inc. is entitled to any profits earned by Defendants that are attributable to the infringement. However, you may not include in any award of profits any amount that you included in determining actual damages.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Defendants' receipts from using the mark FREEDOM RACK in connection with the sale of a product that was formerly sold by Defendants under the mark MAX RACK. Plaintiff has the burden of proving Defendants' gross revenue by a preponderance of the evidence. Expenses are all operating, overhead, and production costs incurred in producing the gross revenue. The Defendants have the burden of proving the expenses and the portion of the profit attributable to factors other than use of the FREEDOM RACK mark by a preponderance of the evidence.

In deciding whether to award profits to Plaintiff Max Rack, Inc., you may consider the following factors:

1.      Whether Defendants had the intent to confuse or deceive;

2.      Whether Plaintiff Max Rack, Inc.'s sales have been diverted;

3.      Whether other remedies, such as actual damages, are adequate to compensate Plaintiff Max Rack, Inc.;

4.      Whether Plaintiff Max Rack, Inc. unreasonably delayed in asserting its rights;

5.      The public interest in making Defendants' conduct unprofitable; and

6.      Whether this is a case of Defendants "palming off" Max Rack, Inc.'s goods as Defendants' own.

Adapted from 3A Fed. Jury Prac. & Instr. § 159:92 (6th ed.); 15 U.S.C. § 1117; *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416 (6th Cir. 2010).

8.     **Intentional Infringement**

If you find that the Defendants infringed the Plaintiff's trademark, you must also determine

whether the Defendants used the trademark intentionally.

Adapted from 15 U.S.C. § 1117(b).

## DEFENDANTS' AMENDED PROPOSED VERDICT FORM

We, the jury, being first duly empaneled and sworn in the above-captioned case, find as follows:

### Liability

1.     On Plaintiff Max Rack, Inc.'s claim for trademark infringement of the MAX RACK mark by Defendant Core Health & Fitness, LLC, we find for:

_____ Plaintiff Max Rack, Inc.

_____ Defendant Core Health & Fitness, LLC

2.     On Plaintiff Max Rack, Inc.'s claim for unfair competition by Defendant Core Health & Fitness, LLC, we find for:

_____ Plaintiff Max Rack, Inc.

_____ Defendant Core Health & Fitness, LLC

3.     On Plaintiff Max Rack, Inc.'s claim for trademark infringement of the MAX RACK mark by Defendant Star Trac Strength, Inc., we find for:

_____ Plaintiff Max Rack, Inc.

_____ Defendant Star Trac Strength, Inc.

4.     On Plaintiff Max Rack, Inc.'s claim for unfair competition by Defendant Star Trac Strength, Inc., we find for:

_____ Plaintiff Max Rack, Inc.

_____ Defendant Star Trac Strength, Inc.

5.      On Plaintiff Max Rack, Inc.'s claim for trademark infringement of the MAX RACK mark by Defendant Kevin Corbalis, we find for:

_____ Plaintiff Max Rack, Inc.

_____ Defendant Kevin Corbalis

6.      On Plaintiff Max Rack, Inc.'s claim for unfair competition by Defendant Kevin Corbalis, we find for:

_____ Plaintiff Max Rack, Inc.

_____ Defendant Kevin Corbalis

If you found for Plaintiff Max Rack, Inc. on any of Questions 1 through 6 above, please proceed to Questions 7 through 13 on the following page.

If you did not find for Plaintiff Max Rack, Inc. on any of Questions 1 through 6 above, please sign and date this verdict form and return it to the bailiff.

**Damages**

7.      State the amount of actual damages that should be awarded to Plaintiff Max Rack, Inc., if any.

$ _____

8.      If you found for Plaintiff Max Rack, Inc. in response to Question 1 or Question 2, state the amount of Defendant Core Health & Fitness, LLC's profits that should be awarded to Plaintiff Max Rack, Inc., if any.

$ _____

9.      If you found for Plaintiff Max Rack, Inc. in response to Question 3 or Question 4, state the amount of Defendant Star Trac Strength, Inc.'s profits that should be awarded to Plaintiff Max Rack, Inc., if any.

$ _____

10.     If you found for Plaintiff Max Rack, Inc. in response to Question 5 or Question 6, state the amount of Defendant Kevin Corbalis's profits that should be awarded to Plaintiff Max Rack, Inc., if any.

$ _____

11.    If you found for Plaintiff Max Rack, Inc. in response to Question 1, did Defendant Core Health & Fitness, LLC use Plaintiff's trademark intentionally?

_____ Yes

_____ No


12.    If you found for Plaintiff Max Rack, Inc. in response to Question 3, did Defendant Star Trac Strength, Inc. use Plaintiff's trademark intentionally?

_____ Yes

_____ No


13.    If you found for Plaintiff Max Rack, Inc. in response to Question 5, did Defendant Kevin Corbalis use Plaintiff's trademark intentionally?

_____ Yes

_____ No


The presiding juror should sign and date this verdict form.


Dated this _____ day of December, 2019.


_____
Presiding Juror

Date: December 1, 2019

Respectfully submitted,

*/s/ C. Dennis Loomis*
C. Dennis Loomis (admitted *pro hac vice*)
cdloomis@bakerlaw.com
Baker & Hostetler LLP
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:     310.442.8865
Facsimile:      310.820.8859

Andrew E. Samuels (Ohio Bar No. 90189)
asamuels@bakerlaw.com
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Telephone:     614.228.1541
Facsimile:      614.462.2616

*Attorneys for Defendants*
*Core Health & Fitness, LLC, Star Trac*
*Strength, Inc. and Kevin Corbalis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

<u>*/s/ C. Dennis Loomis*</u>
*Attorney for Defendants Core Health &*
*Fitness, LLC, Star Trac Strength, Inc. and*
*Kevin Corbalis*