IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MAX RACK, INC., <br><br> Plaintiff, <br><br> v. <br><br> CORE HEALTH & FITNESS, LLC, STAR TRAC STRENGTH, INC., and KEVIN CORBALIS, <br><br> Defendants. | Civil Action No. 2:16-cv-1015 <br><br> Judge Algenon L. Marbley <br><br> Magistrate Judge Chelsey M. Vascura |

**DEFENDANT CORE HEALTH & FITNESS, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF MAX RACK, INC.'S MOTION FOR ENHANCED DAMAGES AND AN AWARD OF FEES**

**I.    INTRODUCTION**

Max Rack asked the jury for a "big number" in damages—one comparable to the allegedly "big number that [its principals] put in[] . . . to build [the MAX RACK®] brand and get the product to where it was when they licensed it to Star Trac." (ECF No. 102 at 502:6–11.) The latter "big number," according to Max Rack, was $1 million. (*See* ECF No. 100 at 301:4–12.)

The jury awarded Max Rack an even bigger number: $1,250,000, comprising $1,000,000 in Max Rack's damages and $250,000 in Core Fitness's profits.[1] (ECF No. 92 at 2.) This award represented almost *double* the $640,000 amount that Core Fitness and its predecessor, Star Trac

---

[1] Core Fitness will, at the appropriate time, move for judgment as a matter of law under Fed. R. Civ. P. 50 and, in the alternative, for a new trial under Fed. R. Civ. P. 59. In that motion, Core Fitness will argue that the verdict of infringement is unsupported, and in fact is contradicted, by the evidence in the record, and that the verdict and the associated monetary award are plainly the result of mistake, sympathy and passion rather than a fair and impartial application of the law as instructed by the Court to the facts in the record. While reserving its rights in this regard, Core Fitness accepts, for the purposes of this opposition, the jury's verdict as rendered.

1

Strength, paid Max Rack in agreed royalties under the parties' License Agreement from 2006 through 2015, when Max Rack's licensed patents expired and thus the License Agreement expired by its own terms. (ECF No. 100 at 251:24–252:8.)

Yet now, Max Rack complains that its $1,250,000 award is too small. Max Rack seeks to inflate the award to $3,750,000—plus costs, nearly $400,000 in attorney fees, and an undefined amount of prejudgment interest. (ECF No. 96-1 at 2, 14–15.) Such a bloated award would unfairly penalize Core Fitness and has no place in this closely contested, fairly litigated case. Max Rack's motion for enhanced fees and damages (ECF No. 96) should be denied entirely.

## II.     LEGAL STANDARDS

Max Rack bears the burden of proving entitlement to enhanced damages and fees. *See Tokar v. 8 Whispering Fields Assocs., Ltd.*, No. CV 084573, 2010 WL 11651624, at *2 (E.D.N.Y. Jan. 22, 2010) ("[P]laintiff has not met his burden in proving that he is entitled to an award of enhanced damages."); *Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 650 (S.D.N.Y. 2018) (charging plaintiff trademark owner with "'burden of establishing entitlement to an [attorney fee] award'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). Under the Lanham Act, Max Rack cannot meet its burden without showing that enhanced damages and fees "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). One example of a penalty is a damages award that is "greatly disproportionate" to the plaintiff's actual loss. *La Quinta Corp. v. Heartland Props., LLC*, 603 F.3d 327, 343 (6th Cir. 2010).

No "weighing of equities" (ECF No. 96-1 at 3) can overcome the Lanham Act's prohibition on penalties. The equities, after all, boil down to two elements: "[E]nhancement of damages under section 1117(a) best serves the principles of equity 'where imprecise damage calculations fail to do justice' and the movant can demonstrate that it has been undercompensated as a result." *Smith*

*Corona Corp. v. Pelikan, Inc.*, 784 F. Supp. 452, 482 (M.D. Tenn. 1992) (quoting *Taco Cabana Int'l v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991)). Max Rack cannot establish either element. The jury awarded Max Rack everything it asked for, and then some. Max Rack is not entitled to any more.

### III. ARGUMENT

#### A. Max Rack Is Not Entitled to Enhanced Damages and Costs.

##### 1. Max Rack Seeks to Penalize Core Fitness.

Max Rack concedes that "Lanham Act damages cannot constitute a penalty" and instead must serve a compensation or deterrence function. (ECF No. 96-1 at 3) (citing *La Quinta*, 603 F.3d at 342–43). But Max Rack fails its own test. Enhanced damages and costs would serve only to penalize Core Fitness. They would overcompensate Max Rack and would not deter hypothetical future infringement.

Max Rack has not been undercompensated. "Undercompensated" does not mean "the jury did not give . . . all that [the plaintiff] wanted." *Smith Corona*, 784 F. Supp. at 482. It means that the plaintiff's actual losses far exceed what the jury awarded. *See id.* Even an award of 6% of the plaintiff's claimed damages has been held sufficiently compensatory under the Lanham Act. *See id.* Yet here, the jury awarded Max Rack $1,250,000—almost *double* the $640,000 in agreed royalties that Max Rack received from Core Fitness during the ten-year life of the parties' License Agreement. (ECF No. 100 at 251:19–252:17.) And the jury awarded Max Rack more than 100% of the $1 million that it wanted.

Core Fitness needs no further deterrence. As a case cited by Max Rack explains, enhanced damages are unwarranted to deter a defendant who has voluntarily "de-identified" with the plaintiff's trademark and has provided "no reason to believe it will again infringe." *Ramada*

3

*Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 791 (N.D.N.Y. 2003). Core Fitness has done just that.

In the Declaration of Erin O'Brien dated January 6, 2020 which accompanies Core Fitness's opposition to Max Rack's motion for permanent injunction (the "O'Brien Declaration"), she affirms that following the entry of the verdict, she and her team undertook a comprehensive internal review of all public-facing Core Fitness marketing web site content, augmented by a third party comprehensive web content audit, which confirm that there are no references to the MAX RACK® mark whatsoever. (*See* O'Brien Declaration ¶¶ 2–3.) She also advises that Core Fitness has added a trademark ownership notice to all portions of the company web site dealing with product support, where warranty and replacement part service for STAR TRAC MAX RACK® units sold during the License continues to be offered, which prominently recites that MAX RACK® is a registered trademark owned by Max Rack, Inc. (*See id.* ¶ 4 & Ex. A.) She further reports that Core Fitness has disseminated a reminder notice to all of its domestic independent resellers and distributors that the MAX RACK® mark is not to be used or displayed in any way in connection with their marketing and end user sales of the FREEDOM RACK® product. (*See id.* ¶ 5 & Ex. B.) Core Fitness has ceased all alleged infringement, there is no need or justification for additional "deterrence" in the form of enhanced damages.

    **2. Max Rack Misstates the Facts.**

Max Rack's arguments for enhanced damages misstate the facts. Max Rack's Kirt Moritz did not testify to any "instances of deceptive and misleading uses of the MAX RACK® mark on the internet by Defendants and their distribution network." (ECF No. 96-1 at 6.) Only one Core Fitness website screenshot was received into evidence, and it was a screenshot of the warranty service webpage. That webpage used the term MAX RACK® because, after the License

4

Agreement expired, Core Fitness remained responsible for warranty service on products legally sold as STAR TRAC MAX RACK® products under the License Agreement. Any other screenshots were taken from third-party websites that Core Fitness did not control.

Jeff Dilts of Core Fitness did not testify that "use of the MAX RACK mark and manufacture of the MAX RACK machine itself continued past the termination of the contract." (ECF No. 96-1 at 6.) He testified that the MAX RACK® mark was used with machines that *had already been manufactured* at the time of License termination on November 21, 2015:

> Q    To your knowledge, did Core [Fitness] cease use of the Max Rack name on or before the [License Agreement] expiration date of November 21st, 2015?
>
> A    No. I believe the name still existed on products that *were* manufactured.

(ECF No. 101 at 365:2–5) (emphasis added). Core Fitness changed the name of its product from MAX RACK® to FREEDOM RACK® so that all new production of the units would be built and branded as FREEDOM RACK®s. The evidence confirms that Core Fitness's factory stopped producing products with the MAX RACK® mark as of December 2015. (*Id.* at 417:17–418:6.) The only continuing, purposeful display of the MAX RACK® mark was in connection with Core Fitness's lawful selloff of its existing closeout inventory of STAR TRAC MAX RACK® units. These actions were expressly permitted under the six-month selloff provision of the License Agreement. (*Id.* at 426:16–427:23.)[2]

C. Reed Brown of Core Fitness did not testify that he was "planning for approximately 5 years to terminate [the License Agreement] on November 21, 2015." (ECF No. 96-1 at 6.) Mr. Brown testified that he first became aware of the License Agreement around 2010, as part of his

---

[2] Core Fitness also acknowledges that it sold its final remaining STAR TRAC MAX RACK® units—24 in all—after the six-month selloff period, and for these 24 sales Core Fitness had paid Max Rack the full gross profit realized from those 24 sales. (ECF No. 101 at 428:15–432:9.)

5

due-diligence review of hundreds of Unisen, Inc. contracts and documents prior to what later became the purchase of Unisen assets through an assignment for the benefit of creditors. While performing that due diligence—at which time he was not employed by, nor had any authority or responsibility for, the licensee (Unisen)—he observed that the License Agreement expired by its own terms on November 21, 2015. He also noticed a purported addendum to the License Agreement that would have extended Core Fitness's royalty obligations in perpetuity, although he determined that the addendum was unenforceable. All the while, Mr. Brown was not yet an officer or agent of the licensee. There is no evidence that he was planning anything for five years.

Max Rack also presents a completely speculative suggestion that the evidence submitted by Core Fitness concerning the revenues and profits realized on sales of STAR TRAC MAX RACK® and NAUTILUS FREEDOM RACK® products is unreliable. This evidence is embodied in the Sales Report in evidence as Joint Exhibit 126. The Sales Report was created by Core Fitness Director of Finance and Accounting Scott Winegardner, based on his review of Core Fitness's official records. It was admitted into evidence by Max Rack's stipulation.

All of these Core Fitness accounting records, specifically including the cost data on these and all other products marketed and sold by Core Fitness, are audited twice each year by two different sets of third-party independent auditors. Over ten years of such multiple annual audits, never once has the company's product cost data been challenged or questioned. (ECF No. 101 at 423:8–425:24.)

Max Rack complains that it has no revenue figures dated "after June 2017." (ECF No. 96-1 at 8.) But there is no evidence that Core Fitness sold any more MAX RACK®-labeled units after June 2017. At most, any post-June 2017 revenue figures would be *de minimis* and would not change that Max Rack has been more than adequately compensated by its $1,250,000 jury award.

### 3. Max Rack Misapplies the Law.

All of Max Rack's purportedly "analogous cases" (ECF No. 96-1 at 4) are distinguishable. Two cases involved "holdover licensees"—that is, terminated franchisees who "were holding the [franchisor's] trademark hostage as a bargaining tactic to pressure [the franchisor] into renegotiating the franchise or settling the suit." *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 435 (7th Cir. 1989); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1187 (6th Cir. 1997). But Core Fitness is not a holdover licensee—or any licensee. The License Agreement has expired by its own terms, and Core Fitness has moved on from the MAX RACK® mark to the FREEDOM RACK® mark.

In another case cited by Max Rack, the court allowed enhanced damages only after finding "evidence of substantial damages not reflected in the jury award." *Taco Cabana*, 932 F.2d at 1127. But here, Max Rack has been awarded damages that exceed the "big number" that it asked for. And in another case, the defendant "intended to derive a benefit from [the plaintiff]'s goodwill or reputation *at the time of its initial use* of the . . . mark." *Powerhouse Marks, L.L.C. v. Chi Hsin Impex, Inc.*, 463 F. Supp. 2d 733, 738 (E.D. Mich. 2006) (emphasis added).[3] But Core Fitness had no such intent when it initially used MAX RACK® under the License Agreement. Core Fitness paid $640,000 in agreed royalties to Max Rack for use of the MAX RACK® mark with the patented technology. Once the License Agreement had expired, Core Fitness changed the product name on new manufacture to FREEDOM RACK®, while lawfully selling off its existing inventory

---

[3] In *Powerhouse Marks*, the plaintiff was not awarded disgorgement of the defendant's profits because the plaintiff did not sell fitness equipment, the defendant changed the name of its product, and consumers bought the equipment based on quality and price, not based on the trademark. *Id.* at 739–40. Exactly the same circumstances exist in this case. Yet here, Max Rack was awarded $250,000 in disgorgement even though it had not sold a product in more than a decade. This award is further proof that Max Rack has been overcompensated.

7

of STAR TRAC MAX RACK®s. There is no evidence that Core Fitness attempted to "trade off of" the value of the MAX RACK® trademark.[4]

Max Rack also cites cases in which "the defendant's conduct prevented the plaintiff from developing an accurate picture of lost profits." (ECF No. 96-1 at 5.) Those cases are also distinguishable. In two of them, the court *declined* to award enhanced damages for lack of evidence of misconduct by the defendant. *See Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 77–78 (5th Cir. 1979) (vacating enhanced damages award because it was "unable to ascertain . . . whether the [defendant's] incomplete [discovery] answers were merely attributable to poor recordkeeping practices" as opposed to "stonewalling"); *Clearline Tech. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 710 (S.D. Tex. 2013) (declining to enhance "an already substantial damages award based on nothing more than Plaintiff's own assertions that he suffered additional, un-quantified damages"). In the one case in which the court did enhance damages, the defendant had "refused to participate in th[e] litigation" altogether and failed to "provide[] any information to Plaintiff or the Court regarding his sales." *AARP v. Sycle*, 991 F. Supp. 2d 234, 241 (D.D.C. 2014).

Core Fitness, on the other hand, has actively participated in this case, produced sales reports, and invited Max Rack to its corporate headquarters to inspect the raw data underlying those reports—an invitation that Max Rack never accepted. Any confusion about Core Fitness's lost profits was caused by Max Rack's inaction.

---

[4] Core Fitness did communicate to the marketplace that the product that it had sold for ten years as the STAR TRAC MAX RACK® was still available as the FREEDOM RACK®. But this was entirely lawful, and only served to associate the FREDOM RACK with the reputation for quality and reliability in 'Star Trac' branded products. It certainly was not intended to trade on the reputation of Max Rack, Inc., which had not built or sold any products at all since 2006.

8

**B.     Max Rack Is Not Entitled to Attorney Fees and Prejudgment Interest.**

**1.     This Case Is Not Exceptional.**

This is not an "exceptional case[]" that would merit a fee award. 15 U.S.C. § 1117(a). An exceptional case is a rare case that "stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). This case stands out in neither regard.

Max Rack's position was not especially strong. Two of Max Rack's five claims (and parts of a third claim) did not proceed to trial because the Court granted Core Fitness's motion for summary judgment. (ECF No. 50 at 16.) This result weighs against an exceptional-case finding. *See Ducks Unlimited, Inc. v. Boondux, LLC*, No. 2:14-cv-2885, 2018 WL 1249912, at *8 (W.D. Tenn. Mar. 9, 2018). In *Ducks Unlimited*, the court found no exceptional case because the "[d]efendants' arguments were not frivolous, their conduct was not unreasonable, and their motive was not improper." *Id.* The defendants' reasonableness was supported by the fact that their "motion for partial summary judgment was granted in part." *Id.* And while "Defendants' arguments at trial were ultimately unsuccessful, they were based on appropriate precedent." *Id.* So the court declined to award fees and prejudgment interest. *Id.*

On the claims that made it to trial, the issues were close. After seven hours of deliberation and four questions for the Court, the jury found only one of the three Defendants (Core Fitness) liable for money damages. It found another Defendant (Star Trac Strength) liable for $0, and yet another Defendant (Kevin Corbalis) not liable. These results reflect a close case, not an exceptional one. *See, e.g.*, *Bimbo Bakeries USA, Inc. v. Sycamore*, No. 2:13-cv-00749, 2018 WL 1578115, at *3 (D. Utah Mar. 29, 2018) (denying attorney fees because "the issues were close" and the

"defense does not stand out as unusually weak or unreasonable"); *Biltmore Co. v. Nu U, Inc.*, No. 1:5-cv-00288, 2018 WL 523378, at *2 (W.D.N.C. Jan. 22, 2018) (denying attorney fees because "the Court cannot conclude that the Defendant's position was frivolous or objectively baseless. Notwithstanding the jury's verdict, this was a close case on the issue of infringement.").

Core Fitness did not litigate unreasonably, either. It did not, for example, engage in "the sort of 'wasteful procedural maneuvers' or 'dilatory tactics' that are the hallmark of a case that has been litigated in an unreasonable manner." *JEG Powersports, LLC v. M & N Dealership VI, LLC*, No. 16-0242, 2017 WL 5346388, at *2 (W.D. Okla. Nov. 13, 2017) (quoting *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2017 WL 3534993, at *1 (E.D. Pa. Aug. 17, 2017)). In fact, Core Fitness consistently met deadlines and milestones that Max Rack itself failed to meet.[5]

Meanwhile, Max Rack relies on the same misstated facts (*see* ECF No. 96-1 at 11–12) and inapplicable "holdover licensee" case law (*see id.* at 10) upon which it relies for enhanced damages. Its other holdover licensee cases are equally inapplicable. In *Spiegelberg*, the defendant's conduct was "intentional, deliberate *and* willful" because it continued to sell specific *products* that it was no longer licensed to sell. *Tex. Tech. Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 526 (N.D. Tex. 2006) (emphasis added). But here, Max Rack concedes that *products* are not at issue. (*See* ECF No. 99 at 54:23–55:1: "We're not here to say that the defendants can't manufacture a product

---

[5] *See, e.g.*, ECF No. 50 at 4 ("[Max Rack] did not file a timely response to Defendants' Motion for Summary Judgment. Nor did [Max Rack] attach supporting exhibits to its own Motion for Summary Judgment."); ECF No. 52 at 1 ("[Max Rack] failed to submit a confidential settlement letter and neither [Max Rack] nor counsel appeared at the Settlement Conference."); ECF No. 83 at 1 ("On November 19, 2019, Defendants requested in writing that [Max Rack's] counsel cooperate with Defendant's counsel in preparing joint proposed case-specific jury instructions and a joint proposed verdict form. As of . . . December 1, 2019, Max Rack's counsel has failed, despite repeated additional requests for cooperation, to draft a joint proposal or to comment on Defendants' proposals."); ECF No. 84 at 1 ("[Max Rack's counsel] has not provided sufficient justification for failing to keep up to date with the progress in this case.").

called the Freedom Rack that does the same types of things as the Max Rack."). And in *Timber Products*, the defendant "made absolutely no effort" to determine whether it could use the trademark at issue. *Timber Prods. Inspection, Inc. v. Coastal Container Corp.*, 827 F. Supp. 2d 819, 831 (W.D. Mich. 2011). But here, Core Fitness agreed that it could not use the MAX RACK® mark after expiration of the parties' License Agreement. That is why Core Fitness applied for its new mark, FREEDOM RACK®, on October 15, 2015—more than a month before the License Agreement expired on November 21, 2015.

Max Rack also introduces cases in which the defendants continued to infringe "after receipt of the plaintiffs' demand letters." (ECF No. 96-1 at 10–11.) But those cases are also distinguishable. The demand letters were not determinative—the defendants' egregious conduct was. In one case, the defendant tried to conceal his identity after receiving "several" demand letters. *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1314 (N.D. Ga. 2017). In another case, the defendant violated a court order "expressly prohibiting the use of confusingly similar terms to the protected mark." *Zeroez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1050 (D. Minn. 2015). Max Rack fails to cite a single case in which a demand letter alone merited an exceptional-case finding. *See, e.g.*, *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1160 (D. Colo. 2016) (defendant sold company and company's trademark to plaintiff, only to start new company and use same trademark to compete against plaintiff); *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 921 (S.D. Ohio 2014) (plaintiff "provided Defendants repeated actual notice of much of the infringement involved," since as early as five years before court awarded fees); *Choice Hotels Int'l, Inc. v. Pennave Assocs.*, 159 F. Supp. 2d 780, 781–83 (E.D. Pa. 2001) (defendant licensee used mark before plaintiff licensor authorized such use). Nor can Max Rack

cite an exceptional case in which the defendant took the initiative to change its product name, as Core Fitness did here.

Max Rack's purported "intentional unfair competition" cases (ECF No. 96-1 at 11–12) are distinguishable for many of the same reasons why its demand-letter cases are distinguishable. Those cases again involved egregious conduct such as failure to prosecute, concealment, or an exceedingly weak case on the merits. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 501 (6th Cir. 2013) (defendant "failed to litigate the issue of liability" by failing to respond to plaintiff's motion for summary judgment of infringement); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 63 (1st Cir. 2008) (defendant tried to conceal infringing activity); *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1039–40 (9th Cir. 2003) (plaintiff awarded judgment as a matter of law before case submitted to jury).

Max Rack's purported "passing off" cases (ECF No. 96-1 at 12–13) also miss the mark. In one case, the defendant "made millions of dollars selling his 50% ownership of [his former] business to [plaintiff] but now he seeks to profit off the goodwill of that same business." *ITEX Corp. v. Global Links Corp.*, 90 F. Supp. 3d 1158, 1175 (D. Nev. 2015) In the other case, the defendant ignored repeated requests "to cease their deceptive advertising practices . . . , choosing instead to continue their profitable scheme, even bragging that no one could stop them." *Skydive Ariz., Inc. v. Quattrochi*, 704 F. Supp. 2d 841, 857 (D. Ariz. 2010). But here, Core Fitness voluntarily changed MAX RACK® to FREEDOM RACK® in all of its print and web materials. When Core Fitness found mistakes, it corrected them. It did not try to—or want to—profit off the MAX RACK® brand.

### 2. Exceptional or Not, This Case Does Not Merit Prejudgment Interest.

This case is not exceptional, which is reason enough to deny Max Rack prejudgment interest. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 61 F.3d 904, 1995 WL 431019, at *3 (6th Cir. 1995) ("[P]rejudgment interest . . . is within the discretion of the trial court and is normally reserved for 'exceptional' cases.") (quoting *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)); *see also Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 666 (S.D.N.Y. 2013) ("For largely the same reasons that the Court declines to award [plaintiff] its attorneys' fees, the Court declines to award prejudgment interest on the Lanham Act claims."). But additional, independent reasons for denying prejudgment interest exist here.

First, prejudgment interest would overcompensate Max Rack. "Because prejudgment interest is compensatory in nature, it should not be awarded if it would result in the overcompensation of the plaintiff." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 495 (6th Cir. 2013) (citing *Wickham Contracting Co. v. Local Union No. 3, IBEW, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992)). For the reasons discussed above, Max Rack's $1,250,000 award exceeds the "big number" that it asked for. Because Max Rack "has been adequately compensated" by this jury award, "[n]o more is needed" to make Max Rack whole. *Fresh Del Monte*, 933 F. Supp. 2d at 666; *see also Groeneveld Transport Efficiency, Inc. v. Lubecore Int'l, Inc.*, No. 1:10 CV 702, 2012 WL 1142652, at *1 (N.D. Ohio Apr. 4, 2012) (denying prejudgment interest as "unnecessarily punitive").

Second, Max Rack provides no basis for calculating prejudgment interest. Max Rack simply asks for "prejudgment interest" in the abstract, with no proposed interest rate, accrual date, or supporting calculations. It is not the Court's job to supply that information. *See GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030, 2009 WL 2150891, at *7 n.7 (S.D.N.Y. July 20, 2009)

("Plaintiffs have not explicitly addressed prejudgment interest . . . , nor have they provided the Court with the exact rate or any calculations for an award of prejudgment interest. Thus, the Court does not address the issue.").

## IV. CONCLUSION

The jury fully—and, in Core Fitness's view, overly—compensated Max Rack with an award of $1,250,000. Max Rack won more than the "big number" it asked for. Its motion for enhanced damages and fees should be denied.

Date: January 6, 2020

Respectfully submitted,

*/s/ C. Dennis Loomis*
C. Dennis Loomis  (admitted *pro hac vice*)
Baker & Hostetler LLP
cdloomis@bakerlaw.com
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:	310.442.8865
Facsimile:	310.820.8859

Andrew E. Samuels (Ohio Bar No. 90189)
Baker & Hostetler LLP
asamuels@bakerlaw.com
200 Civic Center Drive, Suite 1200
Columbus, OH 43215-4138
Telephone:	614.228.1541
Facsimile:	614.462.2616

*Attorneys for Defendants Core Health & Fitness, LLC, Star Trac Strength, Inc., and Kevin Corbalis*

# **CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2020, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

>   */s/ C. Dennis Loomis*
>   *Attorney for Defendants Core Health & Fitness, LLC, Star Trac Strength, Inc., and Kevin Corbalis*