**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MAX RACK, INC.,** | : | |
| | : | **Case No. 2:16-cv-01015** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Vascura** |
| **CORE HEALTH & FITNESS, LLC, et al.,** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on four Motions: (1) Defendants' Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial [#112]; (2) Plaintiff's Motion for Enhanced Damages and Attorneys' Fees [#96]; (3) Plaintiff's Motion for a Permanent Injunction [#97, #103]; and (4) Defendants' Motion to Strike Kimberly A. Selvage's Declaration in Support of Plaintiff's Motion for a Permanent Injunction [#108]. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial [#112]; **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Enhanced Damages and Attorneys' Fees [#96]; **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for a Permanent Injunction [#97, #103]; and **DENIES** Defendants' Motion to Strike Kimberly A. Selvage's Declaration [#108].

1

## II. BACKGROUND

On October 19, 2016, Plaintiff Max Rack, Inc. initiated this trademark infringement action alleging that Defendants Core Health & Fitness, LLC, Star Trac Strength, Inc., and Kevin Corbalis used Plaintiff's MAX RACK trademark without authorization to market and sell weightlifting equipment. *See* Doc. 1. Prior to this, Plaintiff and Defendants entered into a licensing agreement, whereby Defendants received the exclusive right to manufacture, sell, and distribute Plaintiff's MAX RACK weightlifting machine from January 24, 2006 until November 21, 2015. Once that agreement expired, Defendants were permitted to continue selling an identical machine, but under a different name. Defendants named their machine the FREEDOM RACK. In its Complaint, Plaintiff asserted five claims, alleging Defendants made unauthorized use of the MAX RACK trademark in connection with sales of the FREEDOM RACK after the expiration of the licensing agreement.

On September 17, 2019, the Court entered an Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment, leaving three of Plaintiff's five claims for trial: (1) Infringement of a Federally Registered Trademark, 15 U.S.C. § 1114(1); (2) Unfair Competition under the Lanham Act, 15 U.S.C. § 1501 et seq.; and (3) Deceptive Trade Practices under Ohio Law, O.R.C. § 4165 et seq. *See* Doc. 50. At trial, following the conclusion of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law. The Court, however, denied that Motion, finding that there was sufficient evidence which, if believed, would entitle a jury to conclude that Defendants committed trademark infringement:

> After considering the motion and reviewing the arguments, it's the Court's position that the plaintiff has adduced sufficient evidence which, if believed, would sustain its claims. There was, for instance, the testimony of Mr. Moritz who performed the Google searches which showed the Max Rack on the Star Trac Web site in 2016, and then another Google search from yesterday shows that the Max Rack are still being affiliated with the Freedom Rack. There's reference in the Freedom Rack manual, for instance, to the Max Racks.

And then there's the likelihood of confusion as highlighted by Mr. Schonauer of the passing off the goods where the Max Racks were sold and delivered as Freedom Racks.

So I think that that evidence would be evidence which, if believed, would entitle a jury to determine that there was trademark infringement, that there was a likelihood of confusion, that there was unfair competition and the like. For that reason, the Court is going to deny the defense Rule 50 motion at this time. We'll proceed with the presentation of the defense case in chief.

Doc. 101 at 45-46. After deliberating, the jury found in favor of Plaintiff and against Defendants Core Health & Fitness, LLC and Star Trac Strength, Inc. on all three counts, and awarded Plaintiff $1 million in compensatory damages and $250,000 in disgorged profits.[1]  *See* Doc. 92. The jury concluded that Defendants infringed upon Plaintiff's protected trademark intentionally. *See id.* Both parties now come to the Court with several post-trial motions.

### III. ANALYSIS

**A.  Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial**

Defendants have moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing the jury's verdict was against the weight of the evidence. In the alternative, Defendants ask the Court to grant them a new trial under Rule 59(b), arguing the jury's verdict was the product of passion and prejudice rather than based on the evidence. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

**1.  Whether Defendants are Entitled to Judgment as a Matter of Law under Rule 50(b)**

A renewed motion for judgment as a matter of law may only be granted if, "when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Barnes v. City of Cincinnati*, 401

---

[1] The jury, however, found in favor of Defendant Kevin Corbalis on all three counts.

3

F.3d 729, 736 (6th Cir. 2005). Defendants argue that the evidence in the record does not support the conclusion that individuals purchasing Defendants' FREEDOM RACK machine would likely be confused as to the source, sponsorship, or affiliation of that product when encountering the MAX RACK trademark displayed in connection with that machine. *Ducks Unlimited, Inc. v. Boondux, LLC*, 2017 WL 3579215, at \*20 (W.D. Tenn. Aug. 18, 2017) ("To sustain a claim for trademark infringement, a plaintiff must prove three elements: (1) it owns the registered trademark; (2) the defense used the trademark in commerce; and (3) the use was likely to cause confusion.") (internal quotations and citation omitted). The Court disagrees.

Defendants concede that Plaintiff offered at least three exhibits at trial demonstrating unauthorized use of the MAX RACK trademark: (1) a Google search for the phrase "Max Rack" which resulted in a hit to Defendant Core Fitness, LLC's website; (2) a Google search for the phrase "Max Rack" which resulted in a hit to a third-party reseller site; and (3) the owner's manual for the FREEDOM RACK which made reference to the MAX RACK. While Defendants claim these unauthorized references were merely the product of human oversight, this was admissible evidence that the jury was permitted to rely upon in reaching its verdict.

Nevertheless, Defendants maintain that there could not be any confusion amongst consumers as to the source of the FREEDOM RACK because the MAX RACK and FREEDOM RACK machines are identical, and Defendants have been the only seller of both machines since 2006. Additionally, Defendants contend that it is the functional attributes of the machine that drive consumer purchasing decisions, not the brand names attached to the machine. Defendants, therefore, argue that they cannot "be held liable for trademark infringement based on the incidental, peripheral mentions of the [MAX RACK] name because there is no evidence that such reference, even if observed by a purchaser, would have been in any way material to the decision to buy the

4

FREEDOM RACK. But even accepting this argument on its face, Defendants have, at most, pointed to a genuine issue of material fact, which was for the jury to resolve.

In a last-ditch effort to persuade the Court, Defendants assert that because the FREEDOM RACK is an expensive piece of equipment purchased primarily by fitness industry professionals, there could not have been any confusion amongst these consumers about what machine they were purchasing. Defendants argue that, at most, consumers who saw references to MAX RACK when purchasing a FREEDOM RACK machine would have attributed this to a typographical error. But again, Defendants have simply raised a genuine issue of material fact that the jury was permitted to resolve in either party's favor.

In short, the jury was tasked with weighing the totality of the evidence in determining whether Defendants' unauthorized use of the MAX RACK trademark created a likelihood of confusion amongst consumers. The jury heard all of the evidence, deliberated for several hours, and rendered a verdict. The Court's role at this stage is not to question how the jury assessed this evidence, so long as there was evidence which, if believed, could support their verdict. Because such evidence existed in this case, Defendants' Renewed Motion for Judgment as a Matter of Law is **DENIED**.

### 2. Whether Defendants are Entitled to a New Trial under Rule 59(b)

A new trial under Federal Rule of Civil Procedure 59(b) is warranted when "a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party, *i.e.,* the proceedings being influenced by prejudice or bias. *Benaugh v. Ohio Civil Rights Comm'n*, 2007 WL 1795305, at *2 (S.D. Ohio June 19, 2007). Defendants raise three arguments in support of their Motion for a New Trial: (1) the sum of all the evidence rebuts a finding of intentional

infringement; (2) the $1 million award of actual damages is clearly the result of passion and prejudice, lacking evidentiary support; and (3) the award of $250,000 in disgorged profits is excessive on its face and unsupported by any competent evidence, further suggesting misdirected passion and prejudice on the part of the jury. The Court will address each of Defendants' arguments, in turn, below.

**a. Whether the Sum of the Evidence Rebuts a Finding of Intentional Infringement**

Defendants' first argument is that there is no evidence in the record sufficient to support the jury's verdict that Defendants "intentionally" infringed upon Plaintiff's protected trademark. Defendants stress that the few references to the MAX RACK trademark in the record were purely the result of human error, as attested to by their director of marketing, Erin O'Brien. As Defendants acknowledge, however, Plaintiff claimed, and the jury agreed, that these were not mere mistakes, but rather a part of a willful, purposeful design to exploit the MAX RACK trademark to help sell the FREEDOM RACK. The jury, as finder of fact, was entitled to weigh the evidence as it saw fit. It is not the role of the Court to question the jury's findings, so long as there was evidence in the record which, if believed, could support their verdict. As the Court has repeatedly held above, there was sufficient evidence in the record to support the jury's verdict of intentional infringement.

Still, Defendants maintain that "[g]iven the complete disconnect between the finding of intentional trademark infringement, on the one hand, and the evidence presented and the law on which the jury was instructed, there remains only one possible explanation: The jury fashioned its verdict in order to express its disapproval of actions by Core Fitness that were stressed by Plaintiff but that are utterly unrelated to the question of infringement." *See* Doc. 112 at 26. For example, Defendants refer to the jury's question to the Court about an addendum agreement -- which the

Court instructed was not relevant to the claims at issue in the case -- to suggest that the verdict was a product of the jury's perception that Defendants wronged Plaintiff by not honoring that allegedly unenforceable agreement.  Defendants' contentions, however, are based on pure speculation. Moreover, "[j]uries are presumed to follow their instructions," such as the Court's instruction to not be controlled by sympathy or prejudice.  *See United States v. Cunningham*, 679 F.3d 355, 383 (6th Cir. 2012) (internal citation omitted).  There is no basis to believe that the jury here did otherwise.

### b.  Whether the $1 Million Damages Award was the Result of Passion and Prejudice

Defendants' next argument is that the jury's award of $1 million in compensatory damages was not supported by the evidence, and thus, demonstrates that the jury was controlled by passion and prejudice.  Defendants stress that an award of compensatory damages requires evidence of actual consumer confusion, which was lacking in this case.  Thus, at the very least, Defendants request that the $1 million compensatory damages award be set aside.

Plaintiff raises the following argument in response:

> In the present case Plaintiff showed proof of [Defendants'] annual revenue in excess of $1,600,000 per year based on the numbers presented during discovery by the Defendant. It is the Defendant's burden to prove cost of goods sold.  The jury then must weigh that evidence to determine the profit.  The jury's award is clearly in line with even one year of revenue/profit, not even taking into account that ample evidence was presented to show infringement for multiple years.

Doc. 114 at 12-13.  In doing so, however, Plaintiff mistakenly conflates an award of disgorged profits -- which the jury found to be $250,000 -- with the award of compensatory damages.  *See* 15 U.S.C. § 1117(a) (Entitling the prevailing party in a trademark infringement action to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) costs of the action.") ("In assessing profits the plaintiff shall be required to prove the defendant's sales only; defendant must prove all elements of cost or reduction claimed.").  The Court's instructions to the jury were

7

clear that in determining an award of disgorged profits, it could not include any amount that it included in determining compensatory damages. *See* Jury Ins. No. 27.

Additionally, to recover an award of compensatory damages in a trademark infringement action, a plaintiff must generally prove that consumers were actually confused by the defendant's unauthorized use of plaintiff's protected trademark. *See, e.g., Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 639 (7th Cir. 2003) ("To recover damages, Zelinski must show that the violation caused actual confusion among his customers and, as a result, he suffered actual injury."); *Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991) ("When a plaintiff seeks money damages in either a product infringement case or a false advertising case asserted under section 43(a), the plaintiff must introduce evidence of actual consumer confusion."); *but see Bd. of Supervisors for LSU Agr. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) ("It is settled in this circuit, however, that actual confusion is not a necessary prerequisite to an award of money damages."); *Choice Hotels Int'l, Inc. v. Pennave Assocs., Inc.*, 43 F. App'x 517, 519 (3d Cir. 2002) ("Miller's argument that '[a]bsent evidence of actual damage, there is no right to an award of damages or profits' is simply wrong."). The Sixth Circuit held just that in the context of a false advertisement claim under the Lanham Act. *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 690 (6th Cir. 2000) ("Like many other circuits, we have held that where plaintiffs seek to recover monetary damages for false or misleading advertising that is not literally false, a violation can only be established by proof of actual deception[.]"); *see also* Restatement (Third) of Unfair Competition §36, cmt. i (1995) ("An actor can be subject to liability for trademark infringement or deceptive marketing upon proof of a likelihood of confusion, but the recovery of damages ordinarily requires proof that some consumers have actually been confused or deceived."); *Cesare v. Work*, 36 Ohio App. 3d 26, 28

(Ohio Ct. App. 1987) ("R.C. 4165.03 provides, in part: A person injured by a deceptive trade practice of another may recover actual damages. R.C. 4165.03 also provides for injunctive relief. Generally, courts grant injunctive relief upon a showing of likelihood of confusion. However, in order to award monetary relief, courts generally require something more, such as evidence of actual losses suffered by the plaintiff or evidence of actual confusion of some customers.") (internal quotations and citations omitted). This is because "actual confusion tends to show these hard-to-prove damages probably exist." *Balance Dynamics Corp.*, 204 F.3d at 691.

Here, Plaintiff does not contend that it produced at trial evidence of actual consumer confusion to support an award of compensatory damages. Nor has the Court been able to find evidence in the record demonstrating Plaintiff suffered a marketplace injury as a result of Defendants' infringement. Instead, Plaintiff's entire case is predicated on the mere likelihood that consumers were confused by Defendants' unauthorized use of the MAX RACK trademark in connection with sales of the FREEDOM RACK. Indeed, Plaintiff's current position is that "actual confusion can be reasonably inferred from the evidence . . . where [Defendants'] own employee . . . testified to the intentional passing off of goods." *See* Doc. 114 at 13-14. While this evidence of a likelihood of confusion may be sufficient to obtain injunctive relief under the Lanham Act, it is not sufficient to sustain an award for compensatory damages. *See id.* at 690 ("[W]e [have] set forth a more lenient standard for obtaining injunctive relief under the Lanham Act: injunctive relief may be obtained by showing only that the defendant's representations about its product have a tendency to deceive consumers[.]") (internal quotations and citation omitted); *see also id.* at 695 ("[E]ven if the advertisements were found literally false and [Plaintiff] presented evidence of willfulness or bad faith, the [lack of] evidence [of marketplace injury] defeats any presumption of

damage[s] to goodwill[.]").  The jury, therefore, erred by awarding Plaintiff compensatory damages absent proof of marketplace injury.

In sum, the $1 million award of compensatory damages cannot stand, as Plaintiff failed to present at trial any evidence of actual consumer confusion.  *Gregory v. Shelby Cty, Tenn.*, 220 F.3d 433, 443 (6th Cir. 2000) ("As we have held, an award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake.") (internal quotations and citations omitted).  Nor can this award be justified as a measure of punitive damages.  *See Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988) ("[W]e hold that § 35 of the Lanham Act does not authorize an additional award of punitive damages for willful infringement of a registered trademark.").  Given, however, that the jury's verdict regarding Defendants' liability for trademark infringement was supported by the evidence, the appropriate remedy is not to grant Defendants a new trial under Rule 59(b), but rather to vacate the jury's compensatory damages award.  *See Streamline Production Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 446 (5th Cir. 2017) ("Finding insufficient evidence to support the damages award, we AFFRIM the jury's findings of trademark infringement but VACATE the damages award.").  Accordingly, the jury's award of $1 million in compensatory damages is **VACATED**.

c.  **Whether the Award of $250,000 in Disgorged Profits was Unsupported by Evidence**

Defendants' final argument is that the jury's award of $250,000 in disgorged profits was not supported by the evidence, further establishing that the jury was misdirected by passion and prejudice.  Defendants maintain that Plaintiff failed to demonstrate that the profits Defendants made from its sales of the FREEDOM RACK were realized *as a consequence* of infringement of the MAX RACK trademark.  This argument, however, shifts the burden applicable to trademark infringement actions.  In recovering disgorged profits under 15 U.S.C. § 1117(a), Plaintiff was

10

required only to prove Defendant's sales of the FREEDOM RACK. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). Plaintiff met that burden here. "Congress did not [also] put upon the despoiled the burden -- as often as not impossible to sustain -- of showing that but for the defendant's unlawful use of the mark, particular customers would have purchased the plaintiff's goods." *Mishawaka Rubber and Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942). Accordingly, Defendants' Motion for a New Trial is **DENIED**.

### B. Plaintiff's Motion for Enhanced Damages and Attorneys' Fees

Plaintiff seeks an award of enhanced damages under 15 U.S.C. § 1117(a) in the amount of $3,750,000 -- three times what the jury awarded at trial. Plaintiff also seeks an award of attorneys' fees under § 1117(a) in the amount of $384,598.32.[2] The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion.

### 1. Whether Plaintiff is Entitled to Enhanced Damages

15 U.S.C. § 1117(a) grants a district court "a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement." *United States Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). In relevant part, § 1117(a) provides that in assessing damages, "the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). Additionally, if the Court finds that the amount of recovery based on profits is

---

[2] Plaintiff also seeks an award of prejudgment interest. But Plaintiff does not suggest what that amount is or how the Court should calculate that amount. Accordingly, to the extent Plaintiff seeks to recover prejudgment interest, the Motion is **DENIED**. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 1995 WL 431019, at *3 (6th Cir. 1995) ("Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for 'exceptional' cases.").

either inadequate or excessive, "the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.*

Here, Plaintiff argues that the Court should enter a judgment in the amount of $3,750,000 because Defendants' trademark infringement was intentional and the jury's award of $1,250,000 is inadequate to deter them from future misconduct.[3] But importantly, the enhanced damages provision under 1117(a) is intended to compensate the victor, not punish the defeated. *See* 15 U.S.C. § 1117(a) ("Such sum in either of the above circumstances shall constitute compensation and not a penalty."); *La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 342 (6th Cir. 2010) ("[T]he Lanham Act expressly prohibits levying damages that may be classified as a 'penalty.'"). Here, Defendants have been ordered to disgorge $250,000 of their ill-gotten profits as a result of trademark infringement. The Court finds this sum sufficient to deter Defendants from future misconduct without constituting an impermissible penalty under § 1117(a).

Alternatively, Plaintiff argues that the Court should award enhanced damages because Defendants' conduct throughout litigation prevented Plaintiff from accurately calculating the amount of Defendants' profits. *See La Quinta Corp.*, 603 F.3d at 343 ("[E]nhancement could, consistent with the 'principles of equity' promoted in [§ 1117(a)], provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct."). For example, Plaintiff claims that the only evidence Defendant presented regarding their cost of goods sold was a summary spreadsheet, and that the only witness available to testify about goods sold had not participated in the calculation of those costs. In addition, Plaintiff contends that Defendants failed

---

[3] The Court has since vacated $1 million of this award, which constitutes the compensatory damages amount.

to produce any evidence with respect to their manufacturing costs. Finally, Plaintiff maintains that the evidence Defendants offered surrounding revenue and profit lacked clarity and completeness.

The Court finds some support for Plaintiff's assertions by way of the December 3, 2019 Opinion and Order Granting Plaintiff's Motion in Limine to Exclude Undisclosed Evidence of Defendants' Costs of Goods Sold. *See* Doc. 85. In that Motion, Plaintiff complained that Defendants failed to provide responsive evidence to its requests for documents supporting Defendants' costs of goods sold. Tellingly, Defendants did not file a response addressing the merits of that Motion, but rather asked the Court to refrain from resolving the matter until after Plaintiff established liability for its claims at trial. The Court thus concluded that Defendants did not contest Plaintiff's allegations. Defendants' present claim that they offered to have Plaintiff come to its facility, sit at a terminal, and pore over a database of unfamiliar documents is too little, too late.

The evasiveness described above on the part of Defendants during the discovery phase could have undoubtedly hindered Plaintiff's ability to calculate accurately Defendants' infringing profits. And this may have just been the tip of the iceberg. Courts may rely on this type of misconduct during discovery to exercise their discretion under § 1117(a) and enhance damages. *See Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 77 (5th Cir. 1979) ("[W]e might agree that increased damages may be justified by defendant's withholding or misrepresenting available sales records, which would have the effect of making much more difficult, if not impossible, plaintiffs' proof of damages or profits."). This Court will do so here. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Enhanced Damages. The Court exercises its discretion under § 1117(a) to double Plaintiff's infringing profits award, thereby bringing Plaintiff's total award to $500,000.

13

## 2. Whether Plaintiff is Entitled to Attorneys' Fees

Under 15 U.S.C. § 1117(a), a district court may award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Although not defined in the statute, "a case is not exceptional unless the infringement was malicious, fraudulent, willful, or deliberate." *Eagles Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004) (internal quotations and citation omitted). "It does not, however, follow that a case will always be 'exceptional' for purposes of awarding attorney fees where the relevant conduct is found to be willful, fraudulent, and deliberate." *J.P. Structures, Inc.*, 130 F.3d at 1192. Rather, "[a]n 'exceptional' case is simply one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019).

The Court finds that this case fits squarely within the construct that other courts have found to constitute exceptional circumstances. Courts have consistently held that where a defendant's intentional infringement continues after a lawsuit is filed, this can amount to an exceptional case. *See, e.g., Ramada Franchise Sys., Inc. v. Boychuk*, 283 F. Supp. 2d 777, 793 (N.D.N.Y. 2003) ("If the infringing conduct was truly innocent, or in good faith, or of a non-willful and deliberate nature, the unauthorized use should have ceased once suit was filed. It did not. Therefore, because the infringement was knowing, willful, and deliberate, this case qualifies as 'exceptional' and attorney's fees are appropriate under the Lanham Act."); *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp.3d 905, 921 (S.D. Ohio 2014) ("This is an exceptional case that warrants attorneys' fees. Plaintiff provided Defendants repeated actual notice of much of the infringement involved, and

14

even if they had not received such notice, no reasonable person would have thought that selling t-shirts with identical marks to those licensed and held by Plaintiff was reasonable."); *Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, 103 F. Supp. 3d 1032, 1050 (D. Minn. 2015) ("Distinctive received two cease and desist letters, direct advice from its counsel, and a court order explicitly prohibiting the use of confusingly similar terms to the protected mark. Despite the clear and repeated warnings, Distinctive's infringement persisted. Therefore, an award of reasonable attorney's fees is appropriate."). Here, the jury determined that Defendants' trademark infringement was intentional. Moreover, Defendants' concede that its trademark infringement persisted after this suit was filed.[4] In fact, this infringement continued even through the date of trial, as evidenced by the testimony of Kirt Moritz.[5] Under these circumstances, an award of

---

[4] *See* Doc. 112 at 15 ("Plaintiff managed to submit in evidence a grand total of three exhibits—Ex. 112, 222, and 131—offered as proof that Core Fitness engaged in such conduct. Ex. 112 and 222 were generated during the course of this litigation for the phrase "max rack." They include a search hit appearing to come from the Core Fitness website and referring to "Max Rack," plus one coming from independent third party reseller OC Fitness.").

[5] *See* Doc. 100 at 89-91

> Q: And the concern I believe is that it says unpack the Max Rack although this document is actually the owner's manual for the Freedom Rack, correct?
>
> A: Yes
>
> Q: So this is an example, is it not, of a use by Core Fitness after the expiration of the license and after the changeover to the Freedom Rack name, or a continued display of the Max Rack mark even though the change -- the name had ostensibly been changed to Freedom Rack, right?
>
> A: Yes
>
> . . .
>
> Q: It was on the Core Health web site before when they were making the Star Trac Max Rack. Isn't that true?
>
> A: It was there this morning.

attorneys' fees under § 1117(a) is warranted.  *See also* O.R.C. § 4165.03(B) (Ohio Deceptive Trade Practices Act) ("The Court may award in accordance with this division reasonable attorney's fees to the prevailing party in either type of civil action authorized by division (A) of this section. . . . An award of attorney's fees may be assessed against a defendant if the court finds that the defendant has willfully engaged in a trade practice listed in division (A) of section 4165.02 of the Revised Code knowing it to be deceptive.").

Plaintiff requests an attorneys' fees award in the amount of $384,598.32.  Plaintiff has accompanied its request with declarations from its entire legal team, each attesting to their hourly billing rate and the time they spent on each matter.  Defendants have not challenged these billing rates, or the representations of the hours expended; therefore, the Court's analysis will be concise.

The lodestar method is a calculation commonly used to determine attorneys' fees.  Under that method, "the fee amount equals the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *B&G Min., Inc. v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 661 (6th Cir. 2008) (internal quotations and citation omitted).  Here, Plaintiff requests attorneys' fees and costs based on the following rates and hours:

| Name | Hours | Rate | Total |
|---|---|---|---|
| Attorney Joseph Okuley | 460.55 | $300/hr | $138,165.00 |
| Attorney John Okuley | 383.60[6] | $450/hr | $172,620.00 |
| Attorney Matthew Schonauer | 186.90 | $270/hr | $50,463.00 |

---

[6] Plaintiff's Motion represents that Attorney John Okuley worked a total of 389.80 hours on this case.  But after totaling all the hours in Attorney John Okuley's affidavit, that number is actually 383.6 hours.  *See* Doc. 96.4

16

| Paralegal Kimberly Selvage | 35.25 | $200/hr | $7,050.00 |
|---|---|---|---|
| Expenses | | | $13,510.32 |
| **Total:** | | | **$381,808.32** |

Upon review of the affidavits supporting the Motion, the Court finds that the rates requested, and hours expended, are reasonable.  Accordingly, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees in the amount of $381,808.32.

### C.  Plaintiff's Motion for Permanent Injunction

Finally, Plaintiff seeks equitable relief in the form of a permanent injunction.  Before turning to that Motion, however, the Court must address Defendants' Motion to Strike the Declaration of Kimberly A. Selvage, which Plaintiff attached to its reply memorandum.  Ms. Selvage's declaration attests that on January 8, 2020, while acting as an investigator for Plaintiff, she made two Google internet searches for the terms "OC Fitness Max Rack" and "af products max rack."  *See* Doc. 106-1.  Her first search resulted in a hit to a Google ad for OC Fitness titled "Star Trac Max Rack."  *Id.*  While the site purported to be selling Defendants' FREEDOM RACK machine, she claims she observed several uses of the term MAX RACK on the page.  *Id.*  Her second search resulted in similar findings on a website associated with AFP.  *Id.*

Defendants move to strike Ms. Selvage's declaration pursuant to Local Rule 7.2, which provides:

> When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence.  Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition.

S.D. Ohio LR 7.2(d). Defendants argue that because Plaintiff was aware of this information at the time it filed its Motion for a Permanent Injunction, Ms. Selvage's declaration needed to be attached to the opening memorandum. This Court disagrees.

Importantly, within Defendants' memorandum in opposition to Plaintiff's Motion for a Permanent Injunction, Erin O'Brien -- Defendants' Director of Marketing -- claimed that she and her team prepared a notice for all of Defendants' third-party resellers and distributors, advising them that the MAX RACK mark should not be used or displayed in any way in connection with the sale of the FREEDOM RACK machine. *See* Doc. 104-1. Ms. Selvage's declaration, therefore, was offered in part to rebut the effectiveness of Ms. O'Brien's notice, which is permissible under Local Rule 7.2(d). Accordingly, Defendants' Motion to Strike the Declaration of Kimberly A. Selvage [#108] is **DENIED**.

Having resolved that initial matter, the Court now returns to Plaintiff's Motion for a Permanent Injunction.

### 1. Whether Plaintiff Waived its Right to Seek Injunctive Relief

Defendants argue that Plaintiff has waived its right to seek injunctive relief because this request, while raised in Plaintiff's Complaint, was not included in the Joint Final Pretrial Order. *See* Doc. 86; *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000) ("This circuit has held that a party's failure to advance a theory of recovery in a pretrial statement constitutes a waiver of that theory."); *ECIMOS, LLC v. Carrier Corp.*, 2018 WL 7272058, at *3 (W.D. Tenn. Oct. 9, 2018) ("A final pretrial order supersedes all prior pleadings and control the subsequent course of the action. Claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint.") (quoting Fed. R. Civ. P. 16(e); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007)) (internal quotations omitted). But even if

Plaintiff unintentionally waived its claim for injunctive relief, the Court has the discretion to amend the pretrial order to prevent manifest injustice.

Federal Rule of Civil Procedure 16(e) provides that a Court may modify a final pretrial conference order "only to prevent manifest injustice." Fed. R. Civ. P. 16(e). Before modifying a pretrial order, the Court must consider factors such as: (1) prejudice to the plaintiffs that would result from a failure to modify; (2) prejudice to the defendant that would result from the modification; (3) the impact of modification on the orderly and efficient conduct of the case; and (4) the degree of willfulness, bad faith, or inexcusable neglect by plaintiffs. *ECIMOS, LLC*, 2018 WL 7272058, at *4 (internal quotations and citations omitted). The Court "should be liberal in allowing amendments where no substantial injury will be done the opposing party, the failure to allow the amendment might result in a grave injustice to the moving party, and the inconvenience to the court is relatively slight." *Id.* (quoting *Globe Indem. Co. v. Capital Ins. & Sur. Co.*, 352 F.2d 236, 239 (9th Cir. 1965).

Here, the Court finds that manifest injustice would result if the Court were not to amend the Joint Final Pretrial Order to include Plaintiff's claim for injunctive relief. Plaintiff, from the inception of this case, has sought injunctive relief, by way of an order enjoining Defendants from continuing to use Plaintiff's MAX RACK trademark in connection with Defendants' sales of their FREEDOM RACK machine. Even in Plaintiff's trial brief, which was filed after the Joint Final Pretrial Order, Plaintiff makes clear that it is seeking injunctive relief. *See* Doc. 91. It thus appears that Plaintiff's failure to include this claim in the Joint Final Pretrial Order was a mere clerical oversight, or excusable neglect. To waive Plaintiff's claim at this stage would, therefore, be highly prejudicial, as it would potentially preclude relief to which Plaintiff is entitled. In contrast, amending the pretrial order would in no way prejudice Defendants or the orderly resolution of this

19

case. Defendants were fully aware that Plaintiff sought to enjoin them from using the MAX RACK trademark. And sufficient evidence was presented at trial to determine whether injunctive relief is appropriate. For this reason, the Court finds that Plaintiff's claim for injunctive relief is not waived.

### 2. Whether Plaintiff is Entitled to a Permanent Injunction

The Supreme Court has instructed that a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]". *Id.*

After prevailing at trial on its trademark infringement claims, Plaintiff now comes to the Court seeking the following injunctive relief: (1) Order Defendants to surrender its ill-gotten profits; (2) Order Defendants to cooperate in the completion of a preliminary inspection of potentially mismarked goods; (3) Enjoin Defendants from importing MAX RACK and FREEDOM RACK machines; (4) Enjoin Defendants from using the MAX RACK mark, except under limited circumstances accompanied by a disclaimer; (4) Order Defendants to pay $50,000 for corrective advertising; (5) Enjoin Defendants from producing MAX RACK and FREEDOM RACK equipment labels; (6) Order Defendants to immediately cease use of the FREEDOM RACK trademark; and (7) Order Defendants to return MAX RACK property and cease all use of the current FREEDOM RACK design.

20

Here, the jury has already awarded Plaintiff $250,000 in disgorged profits, and thus, Plaintiff's first request is **DENIED** as **MOOT**.  Additionally, several of Plaintiff's requests extend beyond the issues presented at trial.  For example, this case was not about the FREEDOM RACK mark infringing upon the MAX RACK mark.  Nor was this case about challenging whether Defendants could model their FREEDOM RACK machine after the MAX RACK machine.  Hence, Plaintiff's requests that Defendants be enjoined from importing MAX RACK and FREEDOM RACK machines,[7] producing FREEDOM RACK equipment labels, using the FREEDOM RACK trademark, and using the FREEDOM RACK design are **DENIED**.  Similarly, the Court **DENIES** Plaintiff's request that Defendants return all MAX RACK property, per the parties' licensing agreement.  Critically, no breach of contract claim was asserted in this action.  Moreover, Plaintiff's request appears to be asking that the Court order Defendants to turn over and/or destroy all engineering drawings that Defendants used to develop the FREEDOM RACK machine.  But whether Defendants infringed upon the design of the MAX RACK machine was not at issue in this case.  Finally, Plaintiff's request that Defendants be ordered to pay $50,000 for corrective advertising is **DENIED**, as Plaintiff is seeking to have the Court impose additional monetary damages, as opposed to injunctive relief.  This request for monetary damages is one that should have been made during the damages phase of trial, and the evidence in support of such should have been presented to the jury.

With three of Plaintiff's seven requests for relief remaining -- (1) Order Defendants to cooperate in the completion of a preliminary inspection of potentially mismarked goods; (2) Enjoin

---

[7] It appears Plaintiff is using MAX RACK and FREEDOM RACK interchangeably here to suggest that because FREEDOM RACK machines were modeled after MAX RACK machines, FREEDOM RACK machines are MAX RACK machines.  In other words, Plaintiff seeks a blanket prohibition on Defendants importing machines bearing any similarity to the MAX RACK machine.

Defendants from using the MAX RACK mark, except under limited circumstances accompanied by a disclaimer; and (3) Enjoin Defendants from producing MAX RACK equipment labels -- the Court will now evaluate them in the context of the injunctive relief factors.

### a. Whether the Court should Order Defendants to Cooperate in the Completion of a Preliminary Inspection of Potentially Mismarked Goods

First, Plaintiff asks the Court to order Defendants to pay for the inspection of at least 100 machines sold in North America that Defendants may have sold as a MAX RACK but delivered as a FREEDOM RACK. Plaintiff then requests that any machine sold as a MAX RACK but delivered as a FREEDOM RACK be relabeled as a MAX RACK, so as to prevent customers from being confused as to the source of the product. The Court, however, does not find that Plaintiff would be irreparably harmed absent this relief. Importantly, given that these customers already purchased the machines, whether they were enticed to purchase a FREEDOM RACK machine because they thought it was associated with the MAX RACK brand is now immaterial. *See Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 967 (6th Cir, 2002) (Although no single factor is controlling, "the demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."). Moreover, the jury already awarded Plaintiff $250,000 in disgorged profits for Defendants' infringing sales. Hence, there is an alternative remedy available at law that could compensate Plaintiff for its injuries. Finally, the balance of hardships and public interest do not weigh in favor of injunctive relief. The process that Plaintiff proposes would be highly invasive to consumers, potentially burdensome for the Court to regulate, and costly for Defendants to fund. Plaintiff's request for injunctive relief is, therefore, **DENIED**.

**b. Whether the Court should Enjoin Defendants from using the MAX RACK Mark, except under Limited Circumstances Accompanied by a Disclaimer**

Next, Plaintiff asks the Court to enjoin Defendants from using the MAX RACK mark, except under limited circumstances accompanied by a disclaimer.  Plaintiff acknowledges that Defendants must make incidental use of the MAX RACK mark to provide warranty service to customers who purchased a MAX RACK during the life of the parties' licensing agreements.  But Plaintiff requests that such use be accompanied by a disclaimer that indicates, among other things, the MAX RACK trademark is owned by Max Rack, Inc., and an internet link to www.maxrack.com.  Additionally, Plaintiff would request that Defendants include a 1-800 number on their product, warranty, and support pages -- paid for by Defendants -- that directs call traffic to the proper MAX RACK channels.

Defendants oppose Plaintiff's request, arguing that it has already implemented some of these measures.  Erin O'Brien, Defendants' marketing director, attests that Defendants have added a trademark ownership notice to all portions of their product support website stating that MAX RACK is a registered trademark owned by Max Rack, Inc.  *See* Doc. 104-1.  And, Defendants will continue to publish this notice without interruption for so long as the company has customers who purchased MAX RACK units that may require warranty or other product support.  *See id.* Defendants maintain that nothing more should be required.

Given that both parties agree on the main relief requested, the Court **GRANTS** Plaintiff's Motion.  Defendants shall continue to post a notice on their website wherever the term MAX RACK appears indicating that MAX RACK is a registered trademark of Max Rack, Inc.  This notice shall persist so long as Defendants have customers who purchased MAX RACK units that might require warranty or other product support.  The Court will also Order Defendants to take the additional step of including a link to www.maxrack.com wherever these notices appear.  This will

ensure that consumers can be easily directed to Plaintiff, if they so desire, and will clear up any confusion as to whether Defendants and Max Rack, Inc. are related entities. The Court, however, will not require Defendants to post and maintain a 1-800 number. This measure would be duplicative, given the link to the Max Rack, Inc. website. It would also expose Defendants to unnecessary costs.

The Court trusts that Defendants will comply with the requirements laid out above. As such, the Court will not order Defendants, as Plaintiff requests, to submit affidavits of compliance in yearly intervals for a five-year period.

### c. Whether the Court should Enjoin Defendants from Producing MAX RACK Equipment Labels

Finally, Plaintiff asks the Court to enjoin Defendants from producing MAX RACK equipment labels. Defendants appear to take no position on this request. Certainly, Plaintiff has proven that Defendants made unauthorized use of the MAX RACK mark, and that this use continued after this lawsuit was filed. Because Plaintiff would be irreparably harmed by Defendants' continued, unauthorized use of Plaintiff's protected trademark, because this harm can be difficult to quantify, because the prejudice to Plaintiff's brand outweighs any burden this relief would pose on Defendants, and because it is in the public's interest to receive truthful product information, the Court **GRANTS** Plaintiff's Motion to enjoin Defendants from producing MAX RACK equipment labels.

### IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial [#112]; **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Enhanced Damages and Attorneys' Fees [#96]; **GRANTS IN PART** and **DENIES IN PART** Plaintiff's

Motion for a Permanent Injunction [#97, #103]; and **DENIES** Defendants' Motion to Strike

Kimberly A. Selvage's Declaration [#108].

### IT IS HEREBY ORDERED:

1) The jury's award of $1 million in compensatory damages is **VACATED**;

2) The jury's award of $250,000 in disgorged profits is **AFFIRMED** and the Court
   enhances that award by an additional $250,000 pursuant to 15 U.S.C. § 1117(a);

3) Defendants shall pay Plaintiff $381,808.32 in attorneys' fees and costs;

4) Defendants shall, for so long as they have customers who purchased MAX RACK
   units that might require warranty or other product support, post a notice on their
   website wherever the term MAX RACK appears, indicating that MAX RACK is a
   registered trademark of Max Rack, Inc. Any notice shall also include a link to
   www.maxrack.com; and

5) Defendants shall refrain from producing MAX RACK equipment labels.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 5, 2020**